220 F.Supp.2d 414 (2002)
In re DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION.
Sandra Anderson, et al.
v.
American Home Products Corporation, et al.
Latrell Ashley, et al.
v.
American Home Products Corporation, et al.
Tanya Sherelle Castal, et al.
v.
American Home Products Corporation, et al.
Nos. MDL 1203, Civ.A. 01-20182, Civ.A. 02-20098, Civ.A. 02-20107.
United States District Court, E.D. Pennsylvania.
August 13, 2002.
*415 Thomas W. Pirtle, O'Quinn & Laminack, Houston, TX, for Sandra Anderson, Plaintiff (01-CV-20182).
Darlene Marie Jacobs, New Orleans, LA, Richard N. Laminack, O'Quinn & Laminack, Houston, TX, Robert G. Harvey, Sr., Mark Philip Glago, Tamara Kluger Jacobson, Harvey Jacobson & Glago, APLC, New Orleans, LA, for Sherrie Age Audrict, Jennifer Ashby, Nicole Barnes, Theresa Bartholomew, Stephanie Clark Bethley, Ruby Beverly, Tesha Bickhan, Elizabeth Bosworth, Almeda Brown, Deborah Brown, Marquerite Burns, Beverly Butler, Deborah Butler, Della Caples, Linda Williams Carter, Reginal Carter, Belinda Chism, Dorothy Cook, Myrna Darby, Patrick Morris, Sandra Nunez, Gail Price, JanieRobertson, Melissa Spurlock-Homer, Audrey Adams, Glenda Barnes, Marie Barney, Clarence Barney, Pearlie Bender, Maxine Bethley, Dorothy Boyd, Etta Briscoe, Gertrude Carr, Veronica Causey, Karen Chaubert, Gilda Crawford, Tabbatha Cuiellete, Ann Duplessis, Earlene Eacher, Wanda Evans, Tracy Flores, Katherine Ford, Andrea Forsyth, Richard Francois, Vada Franklin, Kim Gibson, Bernice Heath, Jamie Hogan, Intervenors-Plaintiffs (01-CV-20182).
Henri Wolbrette, III, Kathleen Ann Manning, McGlinchey, Stafford, et al., New Orleans, LA, Paul B. Kerrigan, Reed, Smith, Shaw & McClay, Philadelphia, PA, Robert D. Rosenbaum, Arnold & Porter, Washington, DC, for American Home Products Corporation, Defendant (01-CV-20182).
Henri Wolbrette, III, Kathleen Ann Manning, McGlinchey, Stafford, et al., New Orleans, LA, Peter Zimroth, New York City, Robert D. Rosenbaum, Arnold & Porter, Washington, DC, Daniel S. Pariser, Arnold & Porter, Washington, DC, for Wyeth-Ayeth Pharmaceuticals, Inc., Defendant (01-CV-20182).
James B. Irwin, V, Kim E. Moore, Brian P. Quirk, Irwin, Fritchie, Urquhart & Moore, LLC, New Orleans, LA, for Gate Pharmaceuticals, Intervenor-Defendant (01-CV-20182).
Stanton E. Shuller, Jr., Leake and Anderson, New Orleans, LA, for Geneva Pharmaceuticals, Inc., Intervenor-Defendant (01-CV-20182).
Vance Arnold Gibbs, Kean, Miller, Hawthorne, D'Armond et al., Baton Rouge, LA, Jason R. Cashio, Kean Miller Hawthorne D'Armond McCowan & Jarman, Baton Rouge, LA, for Interneuron Phaceceuticals, Inc., Intervenor-Defendant (01-CV-20182).
Henri Wolbrette, III, Kathleen Ann Manning, McGlinchey, Stafford, et al., New Orleans, LA, Robert D. Rosenbaum, Arnold & Porter, Washington, DC, for Wyeth-Ayerst Pharmaceuticals, Inc., American Home Products Corporation, Intervenors-Defendants (01-CV-20182).
Paul McConnell Batiza, Deborah Inchaustegui Schroeder, Esq., Mang Batiza Gaudin Godofsky & Penzato, Metairie, LA, for Sheldon Hersch, M.D., Intervenor-Defendant (01-CV-20182).
*416 Henri Wolbrette, III, Kathleen Ann Manning, McGlinchey, Stafford, Et al., New Orleans, LA, Robert D. Rosenbaum, Arnold & Porter, Washington, DC, Mindy Brickman Patron, A Professional Limited Liability Company, New Orleans, LA, for Wyeth-Ayerst Laboratories Company, Intervenor-Defendant (01-CV-20182).
Stanton E. Schuler, Jr., Leake and Andersson, New Orleans, for Rugby Laboratories, Inc., Intervenor-Defendant (01-CV-20182).
Terry Christovich Gay, Janet L. White, Christovich and Kearney, New Orleans, LA, for Medeva Pharmaceuticals Inc., Intervenor-Defendant (01-CV-20182).
Robert W. Moak, Esq., Bobby Moak, Attorney, Bogue Chitto, MS, Edward Blackmon, Jr., Blackmon & Blackmon, Canton, MS, Andrew M. Westerfield, Westerfield & Janoush, Cleveland, MS, Justin G. Witkin, Aylstock Witkin & Sasser, PLC, Gulf Breeze, FL, for Latrell Ashley, Glenda Parks, Plaintiffs (02-CV-20098).
Christy D. Jones, Butler, Snow, O'Mara et al., Jackson, MS, for American Products Corporation, Wyeth-Ayerst Laboratories, Wyeth-Ayerst Laboratories, Company, Defendants (02-CV-20098).
Anand Agneshwar, Arnold & Porter, New York City, for Wyeth laboratories, Inc., Defendant (02-CV-20098).
Luther M. Dove, Jr., Dove & Chill, Jackson, MS, for French's Pharmacy, Inc., Defendant (02-CV-20098).
Stephanie M. Rippee, Butler, Snow, O'Mara, Stevens & Canada, Jackson, MS, for Forrest Brantley, Jr., Defendant (02-CV-20098).
Jennifer A. Butler, Snow, O'Mara, et al., Jackson, MS, for Susan Bodne, Jewell E. Norman, Defendants (02-CV-20098).
Neville H. Boschert, Watkins, Ludlam and Stennis, Jackson, MS, for MCR Pharmaceuticals, Inc., a/k/a American Pharmaceuticals, Inc., a/k/a MCR/American Pharmaceuticals, Inc., Defendants (02-CV-20098).
Sheila M. Bossier, Esq., Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, for Qualitest Products, Inc., Defendant (02-CV-20098).
J. Stewart Tharp, W. Luther Wilson, Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, Ray M. Aragon, MC, Kenna & Cuneo, LLP, Washington, DC, for EON Labs Manufacturing, Inc., Defendant (02-CV-20098).
Kenna L. Mansfield, Jr., Wells, Marble & Hurst, Jackson, MS, for Gate Pharmaceuticals, Defendant (02-CV-20098).
Jimmie B. Reynolds, Jr., Steen, Reynolds & Dalehite, Jackson, MS, for Interneuron Pharmaceutical, Inc., Defendant(02-CV-20098).
Kimberly Nelson Howland, Wise, Carter, Child & Carway, Jackson, MS, for Medeva Pharmaceuticals, Inc., Defendant (02-CV-20098).
Ronald G. Peresich, Page, Mannino, Peresich & McDermott, Biloxi, MS, for Rugby Laborities, Inc., Defendant (02-CV-20098).
Patrick N. Harkins, III, Watkins & Eager, Jackson, MS, for Smithline Beecham Corporation, Defendant (02-CV-20098).
Robert W. Moak, Bobby Moak, Attorney, Bogue Chitto, MS, Andrew M. Westerfield, Westerfield & Janoush, Cleveland, MS, Justin G. Witkin, Aylstock Witkin & Sasser, PLC, Gulf Breeze, FL, for Tanya Sherelle Castal, Debbie Maxwell, Plaintiffs (02-CV-20107).
James B. Galloway, Butler, Snow, O'Mara, Stevens & Cannada PPLC, Gulfport, MS, William M. Gage, Christy D. Jones, Butler, Snow, O'Mara, Stevens & Cannada PLLC, Jackson, MS, for American Home Products Corporation, Wyeth-Ayerst *417 Laboratories, Wyeth-Ayerst Laboratories Company, Wyeth-Ayerst Pharmaceuticals, Inc., Defendants (02-CV-20107).
Anand Agneshwar, Arnold & Porter, New York City, James B. Galloway, Butler Snow O'Mara Stevens & Canada PLLC, Gulfport, MS, William M. Gage, Christy D. Jones, Butler, Snow, O'Mara, et al., Jackson, MS, for Wyeth Laboratories, Inc., Defendant (02-CV-20107).
Luther M. Dove, Jr., Dove & Chill, Jackson, MS, for Medical Arts Pharmacy, Inc., Defendant (02-CV-20107).
Stephanie M. Rippee, Butler, Snow, O'Mara, Stevens & Canada, Jackson, MS, for Forrest Bratley, Jr., Defendant (02-CV-20107).
Jennifer A. Hawks, Butler, Snow, O'Mara, et al., Jackson, MS, for Susan Bodne, Jewell E. Norman, Defendants (02-CV-20107).
Neville H. Boschert, Watkins, Ludlam and Stennis, Jackson, MS, for MCR Pharmaceuticals, Inc., Defendant (02-CV-20107).
Matthew J. Ungarino, Shannon Marie Bruno, Ungarino and Eckert, for Jones Medical Industries, Defendant (02-CV-20107).
Sheila M. Bossier, Esq., Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, for Qualitest Products, Inc., Defendant (02-CV-20107).
J. Stewart Tharp, W. Luther Wilson, Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, Ray M. Aragon, MC Kenna & Cuneo, LLP, Washington, DC, for EON Labs Manufacturing, Inc., Defendant (02-CV-20107).
Kimberly Nelson Howland, Wise, Carter, Child & Caraway, Jackson, MS, for Fisons Corporation, Medeva Laboratories, Inc., Defendants (02-CV-20107).
Charles E. Griffin, Griffin & Associates, Jackson, MS, for Gate Pharmaceuticals, Defendant (02-CV-20107).
Jimmie B. Reynolds, Jr., Bradley B. Vance, Steen, Reynolds & Dalehite, Jackson, MS, for Interneuron Pharmaceuticals, Inc., Defendant (02-CV-20107).
Ronald G. Peresich, Page, Mannino, Peresich & McDermott, Biloxi, MS, for Rugby Laboratories, Inc., Defendant (02-CV-20107).
Patrick N. Harkins, III, Walter T. Johnson, Watkins & Eager, Jackson, MS, for Smithkline Beecham Corporation, Defendant (02-CV-20107).

MEMORANDUM AND PRETRIAL ORDER NO. 2567
BARTLE, District Judge.
Before the court is the motion of plaintiffs in Anderson v. American Home Products Corp., Civ. A. No. 01-20182, to remand to the Civil District Court for the Parish of Orleans, Louisiana, and the motions of plaintiffs in Ashley v. American Home Products Corp., Civ. A. No. 02-20098, and Castal v. American Home Products Corp., Civ. A. No. 02-20107, to remand to the Circuit Courts of Sunflower County and Coahoma County, Mississippi, respectively. The motions are before the undersigned as the transferee judge in MDL 1203, the mass tort litigation involving the diet drugs known as fen-phen. No federal claim for relief is alleged in any of these complaints.
The Anderson action was initially instituted in the state court in Louisiana by Louisiana citizens against various defendants including American Home Products Corporation ("AHP"), which is incorporated in Delaware with its principal place of business in New Jersey.[1] In brief summary, *418 the complaint alleges that the plaintiffs have suffered severe injuries, including valvular heart disease ("VHD"), pulmonary hypertension, and neurotoxicity, due to their ingestion of the drugs Pondimin, Redux, and phentermine. In the beginning the only plaintiffs in the action were individuals who had initially opted out of the Nationwide Class Action Settlement Agreement with American Home Products Corporation ("Settlement Agreement").
On June 5, 2001 the petition for intervention of 50 more Louisiana citizens ("Age plaintiffs")[2] in the Anderson action was granted by a Louisiana state court judge. These plaintiffs are intermediate opt-outs under the Settlement Agreement. The petition named as defendants AHP, three Louisiana physicians, and eight manufacturers of phentermine products ("phentermine defendants"), all eight of which are of diverse citizenship from plaintiffs.[3] On July 12, 2001 AHP filed a notice of removal in the U.S. District Court for the Eastern District of Louisiana as to the Age plaintiffs. Removal was based on the All Writs Act, 28 U.S.C. § 1651. The original plaintiffs are no longer in the case, and all parties agree that the claims of the Age plaintiffs are deemed to be separate from those of the original plaintiffs.
On July 13, 2001 the Age plaintiffs then filed a motion for remand under 28 U.S.C. § 1446 as well as a motion for summary remand under 28 U.S.C. § 1446(c)(4). The plaintiffs maintain that remand is appropriate because all defendants have not consented to removal and because complete diversity does not exist as required under 28 U.S.C. § 1332(a). The federal court in Louisiana did not rule on the motions before the Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this court. On January 24, 2002, the Age plaintiffs filed a new motion to remand with this court. On April 5, 2002, AHP filed a supplemental notice of removal. The Age plaintiffs also filed an amended motion to remand on May 6, 2002, to which AHP responded on July 9, 2002.
We also have before us similar remand motions in Ashley and Castal, two actions originally filed in the state courts of Mississippi. Ashley was filed on behalf of two Mississippi citizens on October 8, 2001 in the Circuit Court of Sunflower County. On that same day, two other Mississippi citizens filed Castal in the Circuit Court of Coahoma County. The Ashley and Castal complaints make similar allegations against AHP and the phentermine defendants of harm suffered due to the use of Pondimin, Redux, and phentermine. Each also makes claims against a Mississippi pharmacy and three sales representatives of AHP who are citizens of Mississippi.
AHP removed both actions to the U.S. District Court for the Northern District of Mississippi under the authority of the All Writs Act and on the basis of diversity of citizenship under 28 U.S.C § 1332. The plaintiffs in each case moved to remand the cases pursuant to 28 U.S.C § 1447(c). They contend that removal was inappropriate because all defendants did not consent and because several of the defendants are Mississippi citizens. The federal court in Mississippi declined to rule on the motions, pending a decision by the JPML as to whether the cases should be transferred *419 here. Upon the JPML's transfer of the cases to this court, the plaintiffs reasserted their remand motions.
AHP has now withdrawn its argument that these actions are properly removed under the All Writs Act and relies solely on 28 U.S.C. § 1441. AHP maintains that it is the only proper defendant and that diversity exists between it and all plaintiffs in Anderson, Ashley, and Castal.[4] AHP further asserts that the phentermine defendants, which have diverse citizenship from plaintiffs and which have not consented to removal, were fraudulently joined and thus their lack of consent to removal is immaterial. According to AHP, the Louisiana medical doctor defendants in Anderson, and the Mississippi pharmacy and sales representative defendants in Ashley and Castal should be disregarded because they too are the subject of fraudulent joinder.
AHP originally argued that the intervention of 50 additional plaintiffs in Anderson violated the terms of the court approved Settlement Agreement on the ground that the Agreement prohibits numerous plaintiffs in one action. This issue, however, is now moot because the parties have stipulated that, regardless of the disposition of the motion to remand, each Age plaintiff will sever his or her claims into separate civil actions and file a new complaint. We will therefore proceed with our analysis as if each plaintiff in Anderson has filed a separate action.

I.
Under the federal removal statute, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over all civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). If an action originally instituted in a state court could have been brought in federal court pursuant to diversity jurisdiction, the defendants may remove it to federal court provided certain procedures are followed and certain conditions met. 28 U.S.C. §§ 1441 and 1446. Similarly, if the federal court subsequently determines that it does not have subject matter jurisdiction over a removed action, it must remand the action to the state court from which it came. 28 U.S.C. § 1447(c).
In order to remove an action to the federal court, it is well settled that all defendants must timely consent to the removal. Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir.1995). The unanimity rule, however, is not applicable with respect to any defendant who has been fraudulently joined. Id. at 213 n. 4. Under our Court of Appeals decision in Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir.1990), joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." (quotations omitted) (emphasis added). The presence of a party fraudulently joined cannot defeat removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921).
We recognize that the burden on AHP to establish fraudulent joinder is a heavy one. Id. at 111, 42 S.Ct. 35. While we "must resolve all contested issues of substantive *420 fact in favor of plaintiff," we do not take this to mean we must blindly accept whatever plaintiffs may say no matter how incredible or how contrary to the overwhelming weight of the evidence. Id. We are also cognizant that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir.1987) (citation omitted). Nonetheless, we are mindful of the Supreme Court's decision in Wilson. The Court made it clear that if the plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence. Wilson, 257 U.S. at 98, 42 S.Ct. 35. We are not to decide automatically in favor of remand simply because some facts may be said to be in dispute.

II.
We turn first to the issue of fraudulent joinder of the phentermine defendants, all of which, as mentioned above, are citizens of states other than Louisiana and Mississippi. The relevant facts are as follows. From 1989 through September, 1997 AHP marketed and sold two prescription drugs for weight loss in the United States under the brand names Pondimin (fenfluramine) and Redux (dexfenfluramine). Beginning in 1992, physicians commonly prescribed Pondimin alone or in combination with phentermine, another prescription diet drug. The ingestion of phentermine helped counteract some of the adverse effects of fenfluramine used by itself. Phentermine was, and still is, manufactured by various entities and is distributed and sold under several different brand names.
Following the withdrawal of Pondimin and Redux from the market in September, 1997, multiple class actions and other lawsuits were filed against AHP and the manufacturers of phentermine alleging that ingestion of their products caused VHD and primary pulmonary hypertension ("PPH"). As mentioned above, all federal cases were transferred to this court for consolidated discovery proceedings. Voluminous discovery took place in both MDL 1203 and state court proceedings, including depositions, document review, and the development of expert testimony. The evidence discovered pointed to fenfluramine and dexfenfluramine as the culprits.
Only two experts were ultimately proffered in MDL 1203 on phentermine causation. After a Daubert hearing, Judge Louis C. Bechtle of this court[5] granted the motions of the phentermine defendants to exclude this opinion testimony that using phentermine in combination with fenfluramine "induces greater cardiovascular toxicity than does fenfluramine alone." Memorandum and Pretrial Order No. 1351 at 29. The court found that "at this time, no epidemiologic data support the position that phentermine, when combined with fenfluramine, increases the risk of PPH or VHD in humans." Id. at 15. It concluded that the proffered experts lacked reliability and a sufficient scientific basis for their opinions. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589-90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1999).
Similar results were reached in other courts. For example, AHP has identified over 30 cases where courts have granted the motions of phentermine defendants to exclude scientific evidence of phentermine causation under Daubert or its state law equivalents. These courts have granted motions for summary judgment, or other motions based on plaintiffs' failure to produce admissible scientific evidence demonstrating that phentermine causes VHD or *421 PPH. In fact, no case has been brought to our attention in which a court has found scientifically reliable evidence of phentermine causing VHD or PPH.
The effect of this lack of evidence is clear when one looks at the history of the diet drug litigation. Phentermine defendants have been routinely and voluntarily dismissed from hundreds of cases by plaintiffs without any settlement payment.[6] For example, in April, 2001 this court held a hearing requiring a group of plaintiffs to show cause why their cases against the phentermine defendants should not be dismissed. Not a single plaintiff out of approximately 200 appeared at the show cause hearing to oppose the dismissal of the phentermine defendants from their cases. A similar result occurred at a second show cause hearing held in September, 2001.
Litigation in state courts has proceeded in the same manner. For instance, in Harris County, Texas,[7] where one of the attorneys for the Age plaintiffs served on the committee appointed to coordinate discovery, no depositions of any witnesses affiliated with a phentermine defendant have been taken. Moreover, the phentermine defendants have not been held to pretrial discovery deadlines or continuing document production obligations. Further, the phentermine defendants' motion to disallow evidence that phentermine caused VHD was unopposed by plaintiffs. This result was actually hailed as a victory by plaintiffs' attorneys, including an attorney representing one of the Age plaintiffs, because it meant to them that the "fen" part of the combination was the problem and that AHP would be unable to claim that VHD was caused by the "phen" part. See Ron Nissimov, Panel Disallows "Phen" Part of Fen-Phen as Evidence, Houston Chronicle, Mar. 31, 1999, at 32A.
Given the universal lack of prosecution of the phentermine defendants, AHP argues that the joinder of them as defendants is a stratagem to defeat its right of removal to federal court. Specifically, AHP contends that plaintiffs' counsel throughout the country and the phentermine defendants have reached agreements whereby plaintiffs will ultimately dismiss the phentermine defendants in exchange for their refusal to consent to removal. As evidence of such agreements, AHP provided the affidavit of Class Counsel Michael Fishbein, Esq., who swore that Edward Weltman, Esquire, national counsel for Teva/Gate Pharmaceuticals, Inc., a phentermine manufacturer, informed him that such an agreement or understanding existed. We find Mr. Fishbein, a respected Philadelphia lawyer, to be credible. Mr. Weltman's deposition, on the other hand, was permeated with evasion. Mr. Weltman testified that he did not recollect any such conversation with Mr. Fishbein. However, he did admit that Peter Resnick, Esquire, national counsel for Medeva Pharmaceuticals, Inc., another phentermine manufacturer, had sought an opinion on the ethics and effectiveness of a removal agreement with plaintiffs. Finally, AHP cites a voice message left by local counsel for a phentermine defendant in Nebraska for AHP's local counsel. The phentermine local counsel stated that he would not be able to consent to removal because of some national counsel agreement not to join in removal of cases instituted by an identified plaintiff's attorney.
*422 AHP also points to significant circumstantial evidence of the existence of removal agreements. The phentermine defendants have recently refused to consent to removal in cases in Louisiana, Texas, and Mississippi, although they did so earlier in other diet drug cases. Failure to consent to removal has occurred even in those jurisdictions in rural Mississippi and the Rio Grande Valley region of Texas which are well known for their high verdicts for plaintiffs against corporate defendants. AHP argues, and we agree, that it makes no sense for large out-of-state corporate defendants to forego removal to federal court in light of this history and the MDL court's favorable Daubert ruling, unless they are merely nominal parties. Tellingly, the phentermine defendants are silent here on the subject of removal.
We are constantly telling jurors that they must not leave their "common sense" outside the courtroom when weighing evidence. We too must follow our own advice. From what has preceded we strongly doubt that there is a colorable claim against the phentermine defendants. However, we need not decide that issue here. Based on the above evidence we find that defendants have met their heavy burden of persuasion that plaintiffs have no real intention in good faith to seek a judgment against the phentermine defendants and that as a result the phentermine defendants are fraudulently joined in these actions. Boyer, 913 F.2d at 111; see Wilson, 257 U.S. at 98, 42 S.Ct. 35. Accordingly, the lack of consent of the phentermine defendants will be ignored in determining the propriety of removal.

III.
We next turn to the contention of AHP that three physicians, Dr. Terri Ditta, Dr. Beverly Yount, and Dr. Sheldon Hersh, were fraudulently joined in the Anderson case. As noted above, each is a Louisiana citizen and thus a non-diverse defendant. It is undisputed from the evidence before us that 48 of the 50 Age plaintiffs had no treatment by and no contact whatever with any of these medical doctors. As to the remaining two, plaintiff Crystal Gatlin was allegedly treated by Dr. Ditta and plaintiff Verna Brown by Dr. Yount.[8] AHP has clearly met its heavy burden of establishing that Dr. Hersh was fraudulently joined as to all plaintiffs, Dr. Ditta was fraudulently joined except as to plaintiff Crystal Gatlin and Dr. Yount was fraudulently joined except as to plaintiff Verna Brown. As discussed above, the Age plaintiffs have agreed to sever their claims from each other. We will therefore grant the motion to remand of plaintiffs Crystal Gatlin and Verna Brown and deny the motion of the remaining plaintiffs.

IV.
In Ashley and Castal plaintiffs have also joined local Mississippi pharmacies which allegedly sold the drugs to plaintiffs upon the presentation of a prescription from plaintiffs' doctors. Plaintiffs have brought claims against the pharmacies *423 for failure to warn, negligence, breach of warranty, and strict liability. AHP argues that the pharmacies are fraudulently joined and that therefore their nondiverse citizenship is immaterial.
Mississippi has adopted the learned intermediary doctrine, which holds that a drug manufacturer has a duty to warn only the prescribing physician of the adverse effects of a drug, not the patient or consumer. Wyeth Laboratories, Inc. v. Fortenberry, 530 So.2d 688, 691 (Miss.1988). Recently, the doctrine was extended to pharmacies by the Mississippi Supreme Court. Moore v. Memorial Hospital of Gulfport, No.2000-CA-01976-SCT, 2002 WL 535908 (Miss. Apr. 11, 2002). In Moore, plaintiffs argued that their pharmacy was negligent for selling them a drug which was contraindicated for pregnant women. The lower court granted the pharmacy's motion for summary judgment, holding that the learned intermediary doctrine had been adopted by Mississippi courts. Accordingly, the court concluded that a pharmacy does not have a legal duty to question the prescribing physician's judgment or to warn the patient, and in the absence of such a duty, no actionable negligence occurred. Id. at *2.
The Mississippi Supreme Court affirmed. It ruled that the learned intermediary doctrine applies to pharmacists and that they have "no legal duty to warn in the context of prescription medication." Id. at *4. The court did carve out two exceptions to the doctrine as applied to pharmacists, one "where it was undisputed that a plaintiff had informed the pharmacy of health problems which contraindicated the use of the drug in question," and two "where pharmacists fill prescriptions in quantities inconsistent with the recommended dosage guidelines." Id. at *5. Since neither of the two exceptions is applicable here, it is clear that plaintiffs' claims against the pharmacies are barred.
Plaintiffs attempt to distinguish Moore by arguing that it is limited to a negligence and failure to warn cases. They maintain that such claims are distinct from other product liability claims and that a jury could impute some liability to the pharmacies under the Mississippi Products Liability Act. We disagree. The cases on which plaintiffs rely in support of this proposition are inapposite. They cite several Mississippi district court cases where motions to remand were granted in similar factual situations. See, e.g., Haynes v. Parke-Davis, No. 2:00CV263P-B (N.D.Miss. Jan 3, 2001); Rankin v. Jannsen Pharmaceutical, Inc., No. 5:00CV190LN (S.D.Miss. Oct. 31, 2000); Hodges v. Wyeth-Ayerst Laboratories, No. 3:00CV254WS (S.D.Miss. May 18, 2000). However, each of these cases was decided applying a "no possibility" of recovery standard for fraudulent joinder. These decisions no longer have vitality as a result of Badon v. RJR Nabisco, Inc., 236 F.3d 282, 286 (5th Cir. 2000), where the Fifth Circuit explicitly determined that the proper question in a fraudulent joinder analysis is whether there is a "reasonable possibility" of a claim against a defendant.[9] Courts applying this latter standard under Mississippi law have found that pharmacy defendants were fraudulently joined and denied remand. See In re Rezulin Prods. Liab. Litig., 133 F.Supp.2d 272, 288-90 (S.D.N.Y.2001); Teague v. Parke-Davis, Civ. A. No. 3:00CV224LN (S.D.Miss. Dec. 5, 2001).
As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. See *424 In re Korean Air Lines Disaster, 829 F.2d 1171 (D.C.Cir.1987); In re Ikon Office Solutions, Inc. Secs. Litig., 86 F.Supp.2d 481 (E.D.Pa.2000). It too is based upon reasonableness, that is, whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." Boyer, 913 F.2d at 111. First, the complaints in Ashley and Castal are devoid of specific allegations against the pharmacies. They are filled instead with general statements levied against all defendants, which most properly can be read as stating claims against the drug manufacturers. See Rezulin, 133 F.Supp.2d at 290-91; Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., No. 5:00CV102LN (S.D.Miss. Sept. 25, 2000).
Second, as with the phentermine defendants, the story of how diet drug litigation against pharmacies has proceeded is illuminating. Again, there is a pattern of pharmacies being named in complaints, but never pursued to judgment, typically being voluntarily dismissed at some point after the defendants' ability to remove the case has expired. See 28 U.S.C. § 1446(b). By way of flagrant example, there is the Bankston Drugstore, in Fayette, Mississippi. As the only pharmacy in Jefferson County, Mississippi, the store is named in hundreds of lawsuits involving the sale of allegedly defective drugs, including fenphen. See Testimony of Hilda Bankston before the Judiciary Committee of the U.S. House of Representatives, dated February 6, 2002, available at http://www.house.gov.judiciary/ bankston  020602.htm ("Bankston Testimony"). Hilda Bankston, the former owner of the pharmacy, testified that because of this "lawsuit frenzy" she has had to spend in-numerable hours retrieving information for potential plaintiffs, testifying in court, enduring the whispers and questions of customers and neighbors who wonder what the pharmacy did to end up in court so often, and worrying about whether her business would survive. Id. Although she sold the pharmacy in January, 2000, she is still deeply mired in the lawsuits, as is her successor. Although the pharmacy is usually dropped from the lawsuits, the costs of hiring lawyers and obtaining insurance can become prohibitive. See Mark Ballard, Mississippi Becomes a Mecca for Tort Suits, National Law Journal, Apr. 30, 2001, at A1. As Ms. Bankston sees it, her "life's work was merely a means to an end for trial lawyers seeking to cash in on lucrative class actions  a back door into the Jefferson County court system." Bankston Testimony.
In light of all of the above, as well as the thorough and well reasoned analysis of the same issue in Rezulin, 133 F.Supp.2d at 288-90, we conclude that there is no "reasonable basis in fact" supporting the Ashley and Castal plaintiffs' claims against the pharmacy defendants under Mississippi law. Thus, they are fraudulently joined. Boyer, 913 F.2d at 111.
Plaintiffs in Ashley and Castal also name three sales representatives of AHP as defendants who are citizens of Mississippi ("sales representative defendants"). It appears from the complaints and the argument on the pending motions that these plaintiffs intend to pursue claims of negligence, failure to warn, misrepresentation, and breach of warranty against the sales representative defendants. Again, AHP argues that these defendants are fraudulently joined. We agree. We note first that there is no indication in either of the complaints that any of the plaintiffs, or any of the plaintiffs' doctors, received any drugs from the sales representative defendants. Further, any allegations of misrepresentation or fraud fall far short of what is required under both federal and Mississippi law. See Fed.R.Civ.P. 9(b); Miss. R.Civ.P.; Allen v. Mac Tools Inc., 671 *425 So.2d 636, 642 (Miss.1996); Brabham v. Brabham, 483 So.2d 341, 342 (Miss.1986).
Even overlooking these deficiencies, there is no reasonable basis under Mississippi law for such claims against the sales representatives defendants. We are persuaded by the analysis and conclusion in both Johnson v. Parke-Davis, 114 F.Supp.2d 522, 524-25 (S.D.Miss.2000),[10] and Rezulin. Both of these cases extended the learned intermediary doctrine to sales representatives, prior to the Moore decision applying it to pharmacies. These holdings are now bolstered by Moore.
Similarly, we concur that under Mississippi law sales representatives are not liable for breach of warranty. Rezulin, 133 F.Supp.2d at 286; Johnson, 114 F.Supp.2d at 525. As in Johnson, "[p]laintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product." 114 F.Supp.2d at 525. On the contrary, sales representatives are not considered "sellers" under Mississippi law, but rather, employees of the businesses who are sellers. McCurtis v. Dolgencorp, Inc., 968 F.Supp. 1158, 1160-61 (S.D.Miss.1997). Accordingly, there is "no reasonable basis in fact or colorable ground supporting the claim against" the sales representative defendants. Boyer, 913 F.2d at 111.

V.
In sum, we will disregard the nonconsent to removal of the phentermine defendants because we find that they are fraudulently joined. In Anderson, the resident doctor defendants are fraudulently joined as to all plaintiffs, except Crystal Gatlin and Verna Brown. Likewise, in Ashley and Castal, we find that the nondiverse pharmacy and sales representative defendants are fraudulently joined. Their citizenship therefore will be ignored in determining the propriety of removal.
The plaintiffs, whether or not in collusion with the phentermine defendants, are engaging in improper efforts to prevent AHP from exercising its statutory right under 28 U.S.C. § 1441 to remove cases based on diversity of citizenship to the federal courts in Louisiana and Mississippi. This statutory right, we should not forget, emanates from Article III, Section 2 of the Constitution. As long as Congress authorizes the federal district courts to exercise subject matter jurisdiction over diversity actions we must protect the right of parties to invoke it. We recognize that AHP has a heavy burden to prevent remand, but that burden has been met here except as to plaintiffs Crystal Gatlin and Verna Brown. What has been transpiring can only be characterized as a sham, at the unfair expense not only of AHP but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against AHP, the real target, in a federal forum. As aptly stated by our Court of Appeals in Boyer, quoting the ALI Study of the Division of Jurisdiction between State and Federal Courts, "so long as federal diversity jurisdiction exists ... the need for its assertion may well be greatest when plaintiff tries hardest to defeat it." Boyer, 913 F.2d at 111.
Accordingly, except for plaintiffs Crystal Gatlin and Verna Brown in Anderson, the motion of plaintiffs to remand their actions to the state courts in Louisiana and Mississippi will be denied.

*426 PRETRIAL ORDER NO. 2567

AND NOW, this 13th day of August, 2002, it is hereby ORDERED that:
(1) the motion and amended motion of plaintiffs to remand in Anderson v. American Home Products Corp. (Doc. Nos. 202790 and 202945) is DENIED except as to plaintiffs, Crystal Gatlin and Verna Brown. The actions of these two plaintiffs are remanded to the Civil District Court for the Parish of Orleans, Louisiana.
(2) the motion of plaintiffs to remand to the Circuit Court of Sunflower County, Mississippi in Ashley v. American Home Products Corp. (Doc. No. 202835) is DENIED; and
(3) the motion of plaintiffs to remand to the Circuit Court of Coahoma County, Mississippi in Castal v. American Home Products Corp. (Doc. No. 202836) is DENIED.
NOTES
[1] AHP changed its name to Wyeth on March 11, 2002. Because all of the actions at issue here were filed before this date, their complaints name AHP as a defendant. We will continue to use that name for purposes of this memorandum.
[2] The first of the fifty intervening plaintiffs is Sherrie Audrict Age.
[3] Because it is not relevant for present purposes, we will not refer to each phentermine defendant separately.
[4] Each complaint also names a variety of entities related to AHP, such as subsidiaries. They are all diverse from plaintiffs and for the sake of simplicity we will not and need not refer to them.
[5] Judge Bechtle retired on June 30, 2001.
[6] While we are unaware of the exact number of plaintiffs who have dismissed their cases against the phentermine defendants, it is undoubtedly in the thousands.
[7] More than 25% of all state diet drug cases have been filed in Texas, and since the inception of consolidated proceedings in Harris County, over 1,250 diet drug cases have been coordinated there.
[8] Late in the afternoon on August 9, 2002, over three weeks after the argument on the pending remand motions and after the massive briefing of all issues had concluded, AHP filed a copy of the deposition of Dr. Ditta. This deposition was conducted in an unrelated diet drug case in which Dr. Ditta is also a defendant. Near the conclusion of the deposition, AHP's attorney questioned her regarding a conversation she had with an attorney for one of the Age plaintiffs. AHP argues that Dr. Ditta's responses to this line of questioning establish that there is no real intention to prosecute her and that she is therefore fraudulently joined. We find that the deposition is untimely and we will not consider it for purposes of this motion. Moreover, there was no opportunity for cross-examination since the Age plaintiffs' attorneys were not present.
[9] In addition, the court in Rankin explicitly premised its holding on the fact that the learned intermediary doctrine had not yet been addressed by Mississippi courts. In light of the subsequent decision in Moore, Rankin is no longer persuasive.
[10] Plaintiffs attempts to distinguish Johnson by arguing that it deals only with a failure to warn claim. This is not so. The case addresses negligence, in the context of a duty to warn, misrepresentation, and breach of warranty.