Mary A. JOE, Plaintiff,

v.

MINNESOTA LIFE INSURANCE COMPANY, Securian Financial Services, Inc., Minnesota Financial Group, Inc., Securian Financial Group, Inc., Securian Financial Holding Company, Charles Douglass Gulley, Jr., C. Douglass Gulley, Jr. & Associates, Inc., John Doe Defendants A–I, Defendants.

No. CIV.A. 1:02cv154BrR.

United States District Court,
S.D. Mississippi,
Southern Division.

April 22, 2003.

Alben N. Hopkins, Hopkins, Barvie & Hopkins, PLLC, Gulfport, MS, for plaintiffs.

Roy C. Williams, Colingo, Williams, Heidelberg, Steinberger & McElhaney, Pascagoula, MS, Kelly D. Simpkins, John E. Hughes, III, Wells, Marble & Hurst, Jackson, MS, for Defendants.

Arthur D. Carlisle, Ocean Springs, MS, for Charles Douglas Gulley, Jr. and C. Douglas Gulley, Jr. & Associates.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This matter is before the Court on the plaintiff's Motion to Reconsider Memorandum Opinion and Order Entered on March 31, 2003 [**docket no. 36–1**]. Having considered the Motion, the applicable statutory and case law, and being otherwise fully advised as to the premises, the Court finds that the plaintiff's Motion is not well-taken and shall be **DENIED.**

The facts of this case were thoroughly detailed in the Court's March 31, 2003, Memorandum Order and Opinion.

■ Although the Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration, the Fifth Circuit has held that such a motion will be treated as either a motion to "alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b). *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir.1991). Whether a court treats the motion under Rule 59(e) or 60(b) depends on the time at which the motion is filed and served. *Teal*, 933 F.2d at 347. If the motion is filed and served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is filed and served after that time, it falls under Rule 60(b). *Id.* Because the plaintiff filed its motion within ten (10) days after the Court entered its Order, the Court treats the motion as one under Rule 59(e).

■ There are three possible grounds for granting a motion for reconsideration under Rule 59(e): (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D.Miss.1990). A party who moves for an altered or amended judgment under Rule 59(e) should do so cautiously and only after careful consideration of the three grounds stated above. *Id.* at 626, n. 1. "Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Id.; see also Nationwide Mutual Fire Insurance Company v. Pham,* 193 F.R.D. 493 (S.D.Miss.2000).[1]

The plaintiff in the case at bar has offered several grounds which it contends support a reversal of this Court's previous order. However, only one of the plaintiff's arguments, that the Court failed to adhere to the fraudulent joinder standard, is appropriate for consideration under Rule 59(e).

■ The plaintiff initially requests that the Court now consider its untimely Rebuttal to the Minnesota Defendants' Response to Plaintiff's Motion to Remand. (Motion to Reconsider, p. 2). The plaintiff states that it sought and received an enlargement of time in another case, *Clio Banes v. Minnesota Mutual Life Insurance Co., et al.,* Civil Cause No. 1:02cv719BrR, "under the mistaken belief that said enlargement of time would apply to ... the Mary A. Joe matter." (Motion to Reconsider, p. 2). In the January 24, 2003 order in the instant case, this Court plainly set the deadline for the plaintiff's response. The plaintiff sought no exten-

---

**1.** The Rule is assuredly not an avenue for strategic motives such as delay or burdening the opposite party with defending an aspect of its case on which it has already prevailed. Indeed, improper use of a Rule 59(e) motion subjects the filing party to the possibility of sanctions under Rules 11(b) and (c) of the Federal Rules of Civil Procedure, especially when the motion is attended by an overabundance of additional briefing which causes the Court unnecessary work on a motion that has already been decided. *Pham,* 193 F.R.D. at 495; *The Andersons, Inc. v. Consol, Inc.,* 208 F.Supp.2d 847 (N.D.Ohio).

sion of that deadline. Furthermore, the Court's opinion in this matter was not issued until an additional eleven (11) days had passed beyond the plaintiffs' original deadline. A party's mistake is not grounds for reconsideration under Rule 59(e).

The plaintiff has submitted a single combined brief in support of both the Motion to Reconsider and its Rebuttal, making it difficult to discern which arguments the plaintiff intended the Court to consider with regard to the Motion to Reconsider. Nevertheless, the Court will address each of the plaintiff's objections in turn.

The plaintiff first asserts that this Court failed to adhere to the fraudulent joinder standard, as it failed to remand the instant case even though, the plaintiff alleges, the Court "had a reasonable belief that Plaintiff could have a possibility of recovery in this case." (Plaintiff's Brief, p. 5).

However, the plaintiff fails to address the Court's stated reason for its denial of the Motion to Remand, which was the Court's finding, based on the entire record, that the plaintiff had "no good faith intention of prosecuting her claim against these resident defendants." (Memorandum Opinion and Order, March 31, 2003, p. 11). As authority, the Court cited *Wilson v. Republic Iron & Steel, Co.*, 257 U.S. 92, 99,

42 S.Ct. 35, 66 L.Ed. 144 (1921), wherein the United States Supreme Court upheld the denial of a plaintiff's motion to remand when the district court found that the resident defendant was joined "without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal". The Court also cited a more recent application of the same rule, appearing in *In re Diet Drugs*, 220 F.Supp.2d 414 (E.D.Pa.2002), wherein the district court, after finding collusion between the plaintiffs and certain defendants, stated that the plaintiffs had "no real intention in good faith to seek a judgment against [them]." *Id.* at 422.

The plaintiff's Motion simply fails to address what was clearly the holding of this Court or challenge the authority on which that holding was based. Indeed, the plaintiff fails to even dispute the Court's finding that it has no real intention of prosecuting a claim against defendant Gulley and his defunct corporation.

As the Court denied the plaintiff's Motion to Remand on the basis that the joinder of resident defendant Gulley and his defunct corporation was merely a collusive sham designed to deprive this Court of jurisdiction, the plaintiff's further arguments regarding the statute of limitations are irrelevant.[2]

---

**2.** The plaintiff's first argument is that Ms. Joe's cause of action against defendant Gulley did not begin to accrue until he *actually pled guilty* to his fraud. Until that time, the plaintiff contends, "it was certainly reasonable for Ms. Joe and other Plaintiffs situated herein to believe that Doug Gulley was innocent." (Plaintiff's Brief, pp. 3–4). It should be noted that Gulley did not plead guilty when he was convicted on seven (7) counts of embezzlement in 1999, but only in a subsequent tax evasion case in 2001. By the plaintiff's reasoning, if Gulley simply maintains his innocence, despite his conviction for embezzlement, Ms. Joe's cause of action will *never* accrue, and any suit she brings against him must be dismissed as unripe. Not surprisingly, the plaintiff cites no authority whatsoever

in support of its argument, much less any authority that supports the remarkable proposition that, even in the face of a conviction, a cause of action for fraud only accrues once the accused has pled guilty to the fraud in a court of law.

Furthermore, this argument is advanced even though Ms. Joe received a check from Minnesota Life in June, 1998, for $88,339.39, with an enclosed letter stating: "This check represents a reimbursement of funds you gave to C. Douglass Gulley, Jr. for the purpose of investment with Minnesota Mutual that now appear to have been either misappropriated by him or converted to his own use." Hence, it is clear that by the summer of 1998, the plaintiff *had actual knowledge* that Gulley had

·Finally, the plaintiff asserts that the depositions of Adam Miller and Arthur Carlisle fully answer the questions posed by this Court in its earlier opinion, and demonstrate that no collusion occurred between the plaintiff and the resident defendants. The plaintiff states: "Interestingly and purposely, Minnesota Defendants omitted to provide the Court with excerpts of testimony ... which clearly explain the answers to questions posed by the Court." (Plaintiff's Brief,· p. 7). Here, the plaintiff is in error on both points. ·First, the Minnesota Defendants provided the Court with the complete depositions of both Miller and Carlisle. Second, the testimony, as explained in this Court's March 31, 2002 Memorandum Opinion and Order, fails to answer the Court's questions.

One central example this failure relates to the question of why Gulley would forego raising any affirmative defenses in his Answer. The closest thing to an explanation that the plaintiff · identifies comes from Carlisle's deposition.

> That is, once again, attorney/client privilege. But I can tell you this: I surely was not going to put Mr. Gulley in a position to be charged with a crime, such as· that of perjury. Given his plea of guilty in a court of law and of record, a lot had to do with not bringing other charges against him. And that was my decision.

(Depo. of Carlisle, pp. 78–79).

This is, of course, a reasonable explanation for why Gulley admitted the allegations of the Complaint. However, both the

plaintiff and Carlisle fail to explain *how raising a valid affirmative defense, the central issue in this litigation, could subject Gulley to a charge of perjury.* If potential danger to his client was Carlisle's actual concern, then one reasonable course to pursue would be to allow a default judgment, rather than supply an answer that admits every allegation and raises no affirmative defenses. Such an answer confers no benefit whatsoever on Gulley, since its practical effect is identical to that of not filing an answer at all.

However, the perceived benefit of such an answer to the *plaintiff* was immense. A brief recounting of the events preceding Gulley's answer demonstrate how this answer fit the plaintiff's needs perfectly.

> August 23, 2002—Judge Walter Gex grants the plaintiff's Motion to Remand in *Snyder v. Minnesota Life Insurance Co., et al.,* 1:02cv156GR. The basis for remand in this case is that a possibility of stating a cause of action exists since Gully had not yet filed an answer asserting the statute of limitations as an affirmative defense.

> September 5, 2002—The Minnesota Defendants file a Motion to Reconsider in *Snyder,* citing four (4) cases, three (3) from the Southern District of Mississippi, wherein the courts denied motions to remand on the basis of the statute of limitations, despite the lack of an answer by the fraudulently joined defendant. These defendants forward a copy of this

---

taken money from ·her. Additionally, counsel's present argument that claims against Gulley only ripened after his guilty plea also stands in contradiction to the ·fact, alluded to in the deposition of Gulley's attorney Arthur Carlisle and. the briefs of the Minnesota Defendants, that at least one of the instant plaintiff's attorneys pursued these "unripe" claims in .an earlier round of lawsuits brought against these same defendants as early as

1998. (Depo. of Carlisle,· p. 75) (Supplemental Response, p. 17). .

The plaintiff's second argument, that Gulley's bankruptcy proceeding tolled the statute, is equally unavailing, as Gulley's bankruptcy clearly did not prevent the plaintiff from filing suit against him. Indeed, the instant suit was filed during said bankruptcy proceeding, prior to Gulley's discharge in April,· 2002.

filing to this chambers in reference to the instant case.

At this point, the Minnesota Defendants had made it clear that this Court has previously denied motions to remand despite the lack of an answer from a fraudulently joined defendant. Obviously, in order to counter this argument, the plaintiff begins an attempt to obtain an answer from Gulley, realizing, of course, that not just any answer will do. The only answer that will benefit the plaintiff is the one described by Judge Gex in the *Snyder* opinion which states: "The Court cannot declare there is no possibility of recovery when in fact *Gulley could waive his affirmative defense by failing to plead it if or when an Answer is filed." Snyder,* at 4 (emphasis added).

> September 13, 2002—After failing to answer the Complaint for over five (5) months, Gulley's attorney, Carlisle, executes an affidavit, solicited by the plaintiff's attorney, Adam Miller, stating he did receive service for Gully and his company.
>
> September 18, 2002—The plaintiff submits its Response to the Minnesota Defendants' Motion to Reconsider along with Carlisle's affidavit, and argues that Gulley is prevented from filing an answer by the Federal Rules. A copy of said Response is forwarded to this chambers in reference to the instant case.
>
> September 19, 2002—Despite the argument offered the day before, plaintiff's counsel now faxes Carlisle a letter seeking an answer.

According to Carlisle's testimony, he was aware that the waiver of a statute of limitations defense had become an issue in this litigation. (Depo. of Carlisle, p. 57).

However, Carlisle denies considering defenses for his client. (Depo. of Carlisle, p. 56). Furthermore, *Carlisle denies ever discussing potential defenses with Gully.* (Depo. of Carlisle, p. 57).[3]

> September 24, 2002—Carlisle serves Gulley's answer on plaintiff's counsel *only.*
>
> October 2, 2002—Carlisle files Gulley's answer with the clerk.

■ After failing to discuss potential defenses with Gulley, Carlisle then produces the precise answer described by Judge Gex in *Snyder,* an opinion Carlisle admits to having read in his deposition. (Depo. of Carlisle, p. 60–61).[4] Despite filing a thirty-five (35) brief in support of the Motion to Reconsider, addressing all manner of issues, the plaintiff does not attempt an explanation of these unusual events, which were discussed in detail in the Court's previous opinion, and which clearly formed the basis for its finding of collusion. In this Court's opinion, there continues to be only one explanation that can fully account for Carlisle's well-timed production of an answer which was of no benefit to his client, but perfectly suited to the plaintiff's needs. This attempt to deprive this Court of jurisdiction must fail. Accordingly,

IT IS HEREBY ORDERED that the plaintiff's Motion to Reconsider [**docket no. 36–1**], is **DENIED.**

---

**3.** This statement by Carlisle, in particular, makes it clear that he was responsible for the omission of all affirmative defenses in the Complaint.

**4.** It would be surprising if Carlisle had not read this opinion, since his client was the focus of it.