**James F. BOYER and Mary R. Boyer,**

v.

**SNAP–ON TOOLS CORPORATION, Kenneth Baldwin and Keith A. Kaiser.**

**Appeal of James F. BOYER and Mary R. Boyer.**

**No. 90–5221.**

United States Court of Appeals, Third Circuit.

Argued Aug. 2, 1990.

Decided Sept. 5, 1990.

Harry W. Reed (argued), Davis, Katz, Buzgon, Davis, Reed & Charles, Lebanon, Pa., for appellants.

John F. Dienelt (argued), Gordon W. Hatheway, Jr., Lisa S. Garbowitz, Reed, Smith, Shaw & McClay, Washington, D.C., Robert B. Hoffman, Reed, Smith, Shaw & McClay, Harrisburg, Pa., for appellees.

Before SLOVITER, SCIRICA and ALITO, Circuit Judges.

#### OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal by a former dealer of Snap-on Tools Corporation of the district court's grant of summary judgment for defendants Snap-on and two of its employees. We must consider at the outset whether there was subject matter jurisdiction on the basis of diversity of citizenship

and whether the district court erred in denying the plaintiffs' motion to remand.

## I. *Procedural Background and Facts*

Appellant James Boyer and Snap-on Tools Corporation, a corporation which sells automotive hand tools to a nationwide network of dealers for resale to automechanics, entered into a Dealership Agreement (Agreement) in July, 1985. In meetings leading to the signing of the agreement, Boyer met with appellee Kenneth Baldwin, a branch manager at Snap-on, and Keith Kaiser, a Snap-on field manager. Boyer invested more than $40,000 in his dealership, had an inventory of more than $29,000 worth of Snap-on tools, and mortgaged his home in order to borrow money to invest in the dealership. By late 1987 and early 1988, the dealership proved unprofitable for Boyer and Snap-on, and Boyer was orally advised by Snap-on personnel at a January 14, 1988 meeting that he would be terminated.

The Snap-on Agreement provided that on termination of a dealership "with the consent of the Company, the Dealer may sell to the Company at the price paid by the Dealer any of the Products which have been purchased by the Dealer and which remain in its possession in new, saleable condition." App. at 52. In accordance with this provision, Boyer participated in a two-day inventory and turn-in of his tools at the Snap-on branch office in Harrisburg on February 11 and 12, 1988. On the first day, Baldwin presented Boyer with a Termination Agreement that included a release clause which specified, *inter alia*, that "both parties to this Agreement freely waive any and all claims they may have against each other arising out of the Dealership terminated by this Agreement." App. at 149.

Boyer averred in an affidavit and testified on deposition that he was told by a Snap-on employee, Michael Brown, on the first day of the inventory turn-in that if he did not sign the termination agreement (which contained the above release), Snap-on would not pay Boyer for the turned-in tools or other funds allegedly owed by Snap-on to Boyer, that Brown repeated this the second day of the tool turn-in, and that Boyer signed the Agreement later that day based on Brown's representations, because he believed that he would otherwise lose his home and car. Boyer testified that he consulted with his wife, but not an attorney, between the first and second days of the tool turn-in.

The Boyers,[1] residents of Pennsylvania, filed this complaint on December 13, 1988 in the Court of Common Pleas of Lebanon County, Pennsylvania, against Snap-on, a Delaware Corporation with its principal place of business in Wisconsin, and Baldwin and Kaiser, both residents of Pennsylvania. The complaint alleged fraud and deceit, fraudulent conspiracy, interference with contract, wrongful termination of dealership, violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, and intentional infliction of emotional distress.

In his detailed 47–page complaint, Boyer alleges five broad aspects of defendants' fraud and misrepresentations. First, Boyer contends that Snap-on through its written materials and through oral statements of Kaiser misrepresented the profitability of the dealership and the risk of failure during the period of time leading up to the signing of the Agreement. Second, he contends that they fraudulently misrepresented the number of customers in Boyer's territory in an inaccurate survey. Third, he alleges that both Kaiser and Baldwin misrepresented the amount of initial capital needed to begin a dealership and that his dealership was bound to fail because he was undercapitalized.

Fourth, Boyer alleges that while he was a dealer Snap-on engaged in a fraudulent scheme through its "Promotional Tools Program" which involved a mandatory shipment of tools selected by Snap-on, initially represented to be $200 to $300 weekly but which increased by 1987 to $1,112 per week. Because he did not fulfill all of

---

**1.** Mary Boyer, James Boyer's wife, was not a party to the dealership agreement. Her claims are largely derivative. References to "Boyer" will include her claims where applicable.

the requirements of that program, he was penalized by being barred from placing orders for his customers during 56 weeks of his dealership. Finally, Boyer alleges wrongful termination of his dealership. In addition to fraud, the complaint alleges breach of contract and warranties against Snap-on.

The defendants filed a removal petition on January 9, 1989. Although on the face of the complaint there was no federal question or complete diversity of citizenship because the Boyers and the individual defendants were Pennsylvania citizens, the removal petition alleged that Baldwin and Kaiser were "fraudulently and improperly joined" because the complaint does not state a cause of action against the individual defendants, because these defendants were alleged to have acted only in the interests of Snap-on and were therefore privileged under Pennsylvania law, and because Boyer signed a release against the individual defendants.

The Boyers filed a motion to remand under 28 U.S.C. § 1447(c). The district court, without expressly holding that Baldwin and Kaiser were sham defendants, denied the motion to remand on the ground that the "in-state defendants would prevail in a motion for summary judgment for failure to state a cause of action by reason of the release in the termination agreement." App. at 160.

The defendants thereafter moved for summary judgment, primarily relying on the release clause in the Termination Agreement. The Boyers opposed the motion, arguing that the release was procured through fraud, economic duress, or in violation of Snap-on's fiduciary duty; that the release covered claims of which the Boyers were unaware; that at the time the Boyers signed the release they were unaware of the alleged fraudulent practices, which they first learned of in July 1988, when they saw an NBC television news story and a Forbes Magazine article detailing Snap-on's practices; and that Mary Boyer, who did not sign the release, had an independent action against the defendants.

The district court granted the motion for summary judgment. The court rejected Boyer's claim of economic duress and fraud in the procurement of the release, and held that the release was broad enough to cover undiscovered fraud. The Boyers filed a timely appeal.

## II. *Discussion*

*A fortiori*, we do not reach the propriety of the district court's grant of summary judgment unless we are satisfied that the district court had subject matter jurisdiction. That, in turn, is dependent upon its decision to disregard the presence of the two individual defendants whose citizenship would destroy diversity.

As a general proposition, plaintiffs have the option of naming those parties whom they choose to sue, subject only to the rules of joinder of necessary parties. While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff had impermissibly manufactured diversity or used an unacceptable device to defeat diversity.

There are substantially more cases dealing with a plaintiff's attempt to manufacture diversity than to destroy it. The first Judiciary Act of 1789, 1 Stat. 73, sought to restrain manufactured diversity jurisdiction by virtue of assignment of the plaintiff's claim, and a more general effort to avoid collusively created diversity was enacted in 1875. *See* Pub.L. No. 61–7031, 36 Stat. 1087, 1098. The current version of that statute, codified at 28 U.S.C. § 1359, requires the federal court to dismiss or remand a suit in which any party, by assignment or otherwise, has been improperly or collusively joined to invoke federal diversity jurisdiction. *See generally Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969).

In contrast, until 1988 there was no statutory ban directed to the avoidance of fed-

eral diversity jurisdiction.[2] As the commentary in the highly regarded *ALI Study of the Division of Jurisdiction between State and Federal Courts* (1969) notes, "[t]here is ... a qualitative difference between a device designed to invoke federal jurisdiction and one designed to avoid it. In the former instance, the already overburdened federal courts are being asked to adjudicate a case that, in the absence of the device, would fall outside their statutory, and perhaps their constitutional, competence. In the latter, if the device succeeds, a case depending on state law merely remains in the state court." *Id.* at 160. Of course, we recognize, as did the ALI Reporter, that "[s]o long as federal diversity jurisdiction exists ... the need for its assertion may well be greatest when the plaintiff tries hardest to defeat it." *Id.* However, that concern cannot defeat plaintiff's right to retain as defendants those parties properly joined, even if the consequence is that defendants must litigate in state court.

■ Defendants removed Boyer's action from state court pursuant to 28 U.S.C. § 1441. Plaintiffs' motion to remand was filed pursuant to 28 U.S.C. § 1447(c) which provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (1988). The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987) (citing *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985)), *cert. dismissed sub nom. American Standard v. Steel Valley Auth.,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). Because a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a "heavy burden of persuasion." *Steel Val-*

*ley,* 809 F.2d at 1010, 1012 n. 6 (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981)).

■ This court has recently stated that joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Abels,* 770 F.2d at 32 (quoting *Goldberg v. CPC Int'l,* 495 F.Supp. 233, 239 (N.D.Cal.1980)); *see also* 1A *Moore's Federal Practice,* ¶ 0.161[2] at 274–76 (2d ed. 1989). A district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. *See B., Inc.,* 663 F.2d at 549; *Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98, 100 (5th Cir. 1990), *petition for cert. filed,* 58 U.S.L.W. 3802 (May 31, 1990) (No. 89–1885). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440–41 (11th Cir. 1983).

■ Turning to this case, we note first that there is no suggestion by defendants that plaintiffs have falsely alleged their Pennsylvania citizenship or that of Baldwin and Kaiser. In other words, this is not a situation where "there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *B., Inc.,* 663 F.2d at 549; *see Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984).

Second, this is not a case where the action against the individual defendants is defective as a matter of law. *See* 1A *Moore's Federal Practice* ¶ 0.161[2] at 274 ("The joinder may be fraudulent if the

---

**2.** The 1988 amendment curtailed the practice of naming fictitious defendants to destroy diversi-

ty. *See* 28 U.S.C. § 1441(a) (1988) (as amended).

plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state."). Under Pennsylvania law there is a cause of action against employees whose fraud and misrepresentations contributed to plaintiff's damages, even if these actions were taken in the course of their employment. *See Loeffler v. McShane*, 372 Pa.Super. 442, 446–47, 539 A.2d 876, 878 (1988) (quoting *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621, 470 A.2d 86, 90 (1983)) ("officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor"); *see also Village at Camelback Property Owners' Ass'n v. Carr*, 371 Pa. Super. 452, 462–63, 538 A.2d 528, 533–34 (1988), *aff'd*, 572 A.2d 1 (1990); *Moy v. Schreiber Deed Sec. Co.*, 370 Pa.Super. 97, 101–03, 535 A.2d 1168, 1170–72 (1988); *Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112 (1987). Thus, there is no basis to analogize this case to *Tedder v. F.M.C. Corp.*, 590 F.2d 115 (5th Cir.1979) (per curiam), cited by defendants, where the court held that joinder of non-diverse fellow employees could be disregarded because there was no reasonable basis under which plaintiffs could avoid the state's broad grant of immunity conferred on fellow employees.

Defendants argue that the court may pierce the pleadings to determine whether there has been a fraudulent joinder. Assuming some piercing is appropriate to decide whether plaintiffs have asserted a "colorable" ground supporting the claim against the joined defendant, that inquiry is far different from the summary judgment type inquiry made by the district court here. The limited piercing of the allegations to discover fraudulent joinder is illustrated by *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879 (10th Cir.1967), where the non-diverse employee of defendant railroad had uncontestedly discontinued his employment with the railroad 15 months before the accident in question. *See also Lobato v. Pay Less Drug Store, Inc.*, 261 F.2d 406 (10th Cir.1958)

(absence of allegations that individual non-diverse defendants participated in tortious acts alleged).

In this case, we need not decide the extent of permissible inquiry into the validity of the release of Boyer's claims against Baldwin and Kaiser, the non-diverse defendants, because that issue, which the district court stated "is likely to be dispositive of plaintiffs' claims against Baldwin and Kaiser," is equally applicable to Snap-on. In fact, ultimately, that is what the district court decided when it granted summary judgment. Thus, the district court, in the guise of deciding whether the joinder was fraudulent, stepped from the threshold jurisdictional issue into a decision on the merits. As the Supreme Court held in *Chesapeake & Ohio Ry. v. Cockrell*, 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914), this it may not do.

Because *Cockrell* is directly applicable, the underlying facts and the procedural posture are significant. The administrator of an estate, who was a Kentucky citizen, sued a Virginia railroad company and its engineer and fireman, who were citizens of Kentucky, for negligently causing the death of the intestate. The defendants removed the case to federal court on the ground that the charges of negligence against the employees were fraudulently made, thereby vesting the federal court with jurisdiction over the diverse parties, the railroad and administrator. The Supreme Court, after noting first that under Kentucky law employees were jointly liable with the employer for negligent acts committed by the employees, held that removal was improper.

The railroad had sought removal on the ground that the charges of negligence against the employees were false and untrue and made for the sole and fraudulent purpose of affording a basis for the fraudulent joinder. The Court stated that while this contention "may have disclosed an absence of good faith on the part of the plaintiff in bringing the action at all ... it did not show a fraudulent joinder of the

engineer and fireman." *Id.* at 153, 34 S.Ct. at 280. The Court continued:

> As no negligent act or omission *personal to the railway company* was charged, and its liability, like that of the two employes, was, in effect, predicated upon the alleged negligence of the latter, *the showing manifestly went to the merits of the action as an entirety and not to the joinder;* that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants.... As [the two employees] admittedly were in charge of the movement of the train and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company.

*Id.* (emphasis added).

Although Snap-on seeks to distinguish *Cockrell* on the ground that the Boyers asserted certain allegations against Snap-on which were not asserted against the non-diverse employees, we find *Cockrell* indistinguishable because the dispositive defense, that based on the release, was raised by all three defendants. Similarly, the Boyers' arguments that the release was invalid involve identical legal and factual issues applicable to the individual defendants and Snap-on. Informed by *Cockrell,* we hold that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court.

### III.  *Conclusion*

For the reasons set forth above, we will vacate the entry of summary judgment entered against the plaintiffs because the district court was without jurisdiction; we will reverse the district court's order denying the plaintiffs' motion to remand; and we will remand to that court with directions to remand this case to the state court.