United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 7, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-60782

---

KELLI SMALLWOOD,

Plaintiff-Appellant,

versus

ILLINOIS CENTRAL RAILROAD COMPANY; MISSISSIPPI DEPARTMENT OF
TRANSPORTATION,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Southern District of Mississippi

---

Before KING, Chief Judge, and HIGGINBOTHAM, and STEWART, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A locomotive operated by Illinois Central Railroad Company
(Illinois Central) injured Kelli Smallwood when it struck the
automobile in which she was traveling. The accident occurred at a
Mississippi Department of Transportation (MDOT) railroad crossing
in Florence, Mississippi. At the time of the accident the crossing
did not have automatic gates, but was equipped with automatic,
flashing warning lights which had been installed using federal

funds.

Smallwood filed suit in Mississippi state court alleging negligence claims against Illinois Central and MDOT. The complaint averred that MDOT negligently failed to install gates at the crossing despite its knowledge that the crossing was unreasonably dangerous and extraordinarily hazardous. It also alleged that MDOT had more than six months before the accident authorized and directed Illinois Central to construct gates at the crossing, and the Federal Highway Administration had approved of this installation and allowed federal funding to be used for it, but MDOT and the railroad had negligently delayed in installing the gates.

Illinois Central removed the case to federal court on the basis of diversity jurisdiction and fraudulent joinder.[1] It asserted that Smallwood's joinder of MDOT as a defendant was fraudulent because she could state no claim against MDOT, since the Federal Railroad Safety Act (FRSA)[2] preempted her claims against it.[3] The district court agreed, denying Smallwood's motion to

---

[1] Illinois Central is a citizen of Illinois, and Smallwood is a citizen of Mississippi. Illinois Central argued that for purposes of diversity jurisdiction the district court should ignore MDOT's presence because it was fraudulently joined.

[2] 49 U.S.C. §§ 20101-20153.

[3] Illinois Central argued that the principles of conflict preemption, not complete preemption, applied. Since it did not allege complete preemption, it did not remove on the basis of federal question jurisdiction, because the well-pleaded complaint rule would have precluded removal on that ground. *See infra* note

remand and later dismissing MDOT from the case.[4]  As the only remaining defendant in the suit, Illinois Central then moved for summary judgment on the basis that the FRSA also preempted Smallwood's claim against it.  The district court granted the motion and entered judgment in favor of the railroad.

Smallwood has timely appealed, urging error in the denial of her motion to remand and the dismissal of MDOT.  We conclude that the trial judge erred in finding that MDOT was fraudulently joined, and vacate the judgment and remand this case to the district court

---

53.

[4] With regard to the delay-in-installation claim, the district court's fraudulent joinder determination rested not only on its finding that the FRSA preempted all of Smallwood's claims, but also on its conclusion that Smallwood "did not satisfy her burden of showing that" MDOT had directed Illinois Central to install automatic gates at the crossing.  However, as we recently reminded, it is the *removing party*'s burden to show that "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (internal quotation marks and italics omitted).  Since Illinois Central, the removing defendant, bore the burden of proving that Smallwood had fraudulently joined MDOT, it was required to "put forward evidence that would negate a possibility of liability on the part of" MDOT. *Id.*  However, Illinois Central has pointed to no evidence it proffered to the district court contradicting Smallwood's assertion that MDOT authorized and directed Illinois Central to install automatic gates at the crossing.  "[S]imply pointing to the plaintiff's lack of evidence at this stage of the case is insufficient to show that there is no possibility for [Smallwood] to establish [MDOT's] liability at trial." *Id.* at 650-51.  The district court therefore reversed the burden of proof in concluding that Smallwood "did not satisfy her burden of showing that" MDOT "was not fraudulently joined."  The only other basis for the district court's fraudulent joinder finding was its conclusion that the FRSA preempted Smallwood's claims against MDOT.

with instruction to remand it to the state court from which it was removed.

I

Smallwood argues that there was no fraudulent joinder and therefore the district court erred in refusing to remand the case. We review *de novo* the district court's order denying Smallwood's motion to remand and its decision that MDOT was fraudulently joined.[5] The removing party bears the burden of establishing fraudulent joinder, and can do this either by showing "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[6] The district court found fraudulent joinder because it determined that Smallwood could not establish her claims against MDOT in state court. Such a finding of fraudulent joinder can stand only if the plaintiff has no possibility of recovery against that defendant.[7] "If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable, not merely

---

[5] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311 (5th Cir. 2002).

[6] *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).

[7] *Id.* at 648.

theoretical."[8]

In determining fraudulent joinder, a trial judge may "pierce the pleadings" and consider summary judgment-type evidence in the record.[9] However, the court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and resolve any contested issues of fact and legal ambiguities in the plaintiff's favor.[10] "The burden of persuasion on those who claim fraudulent joinder is a heavy one."[11]

## II

Relying on *Chesapeake & Ohio Railway Co. v. Cockrell*[12] and *Boyer v. Snap-On Tools Corp.*,[13] Smallwood argues that there was no fraudulent joinder because its only basis was MDOT's federal preemption defense, which was also asserted as a defense by Illinois Central, the diverse defendant. In *Cockrell*, an administrator of an estate, who resided in Kentucky, had filed suit in a state court of Kentucky against a Virginia railway company and

---

[8] *Id.* (italics and internal quotation marks omitted).

[9] *Id.* at 649.

[10] *Id.*

[11] *Id.*

[12] 232 U.S. 146 (1914).

[13] 913 F.2d 108 (3d Cir. 1990).

an engineer and fireman who both lived in Kentucky.[14]  The suit sought to recover damages for the death of the administrator's intestate, who was struck by a train.[15]  The railway company attempted to remove the case to federal court on the basis that the plaintiff had fraudulently joined the railway employees to defeat federal jurisdiction.[16]  The state court, declining to surrender its jurisdiction, proceeded to a trial and entered judgment against the company, which the state court of appeals affirmed.[17]

The Supreme Court granted certiorari to determine "whether it was error thus to proceed to an adjudication of the cause notwithstanding the company's effort to remove it into the Federal court."[18]  It concluded that the trial court had not erred in rejecting the railway company's fraudulent joinder argument, which consisted of the short and plain statement that "the charges of negligence ... against the defendants were each and all 'false and untrue and were known by the plaintiff, or could have been known by the exercise of ordinary diligence, to be false and untrue....'"[19] It reached this conclusion on the basis that the plaintiff's

---

[14] 232 U.S. at 150.

[15] *Id*. at 149-50.

[16] *Id.* at 150-51.

[17] *Id.* at 150.

[18] *Id.*

[19] *Id.* at 151.

negligence allegations against the railway employees applied with equal force to the company, which was only liable if the employees were also liable.[20]  The Court reasoned that although the plaintiff's petition "may have disclosed an absence of good faith on the part of the plaintiff in bringing the action at all, ... it did not show a fraudulent joinder of the engineer and fireman."[21] Since "no negligent act or omission personal to the railway company was charged, and its liability, like that of the two employees, was, in effect, predicated upon the alleged negligence of the latter," the fraudulent joinder allegations "manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants."[22]  The Court concluded:

> Plainly, this was not such a showing as to engender or compel the conclusion that the two employees were wrongfully brought into a controversy which did not concern them.  As they admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company.  We conclude, therefore, that the petition for removal was not such as to require the state court to surrender its jurisdiction.[23]

---

[20] *Id.* at 152-53.

[21] *Id.* at 153.

[22] *Id.*

[23] *Id.* at 153-54; *see also Chi., Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915) (relying on *Cockrell* to reject the defendant railway's argument that the plaintiff had fraudulently joined the defendant train conductor to defeat

-7-

Smallwood argues that *Cockrell* applies to her case because she alleged that Illinois Central and MDOT were jointly and severally liable for her injury, and the railroad's contention that her claim against MDOT is preempted by the FRSA is in actuality not a claim that MDOT has been fraudulently joined but instead an assertion that her case is "ill founded as to all the defendants." She asserts that preemption of her claims is a merits determination for a Mississippi state court to make.

Smallwood also relies upon the Third Circuit's decision in *Boyer v. Snap-On Tools Corp.*,[24] in which the plaintiff, a former dealer of Snap-On Tools, filed suit in Pennsylvania state court against the company and two of its employees, alleging, *inter alia*, that they had misrepresented the profitability of the dealership, the risk of failure, and the amount of capital needed to begin a dealership.[25] The defendants urged that Boyer had signed a release waiving any and all claims arising out of the plaintiff's dealership.[26] The parties lacked diversity because the plaintiff and the employee defendants resided in Pennsylvania, although the

---

diversity jurisdiction); *Ill. Cent. R.R. Co. v. Sheegog*, 215 U.S. 308, 316 (1909) (rejecting the defendants' fraudulent joinder argument because "the joinder could not be fraudulent in a legal sense on any ground except that the charge against [the diverse defendant] was fraudulent and false").

[24] 913 F.2d 108, 109–10 (3d Cir. 1990).

[25] *Id.*

[26] *Id.* at 110.

company was a Delaware corporation with its principal place of business in Wisconsin.[27] Still, the defendants removed the case to federal court on the basis of diversity jurisdiction and fraudulent joinder, contending that the plaintiff had no colorable claim against the employee defendants because of the release.[28]

The district court denied the plaintiff's motion to remand on the basis of the release and granted summary judgment to both Snap-On and the employee defendants on that same ground.[29] The Third Circuit reversed, reasoning that in addressing the fraudulent joinder question it need not decide whether the release applied to the claims against the employee defendants because "that issue ... [was] equally applicable to Snap-On";[30] "ultimately, this is what the district court decided when it granted summary judgment" in favor of all of the defendants based on the release.[31] The *Boyer* court explained, "in the guise of deciding whether the joinder was fraudulent," the district court "stepped from the threshold jurisdictional issue into a decision on the merits."[32]

*Boyer* cited *Cockrell* and reasoned that, as in *Cockrell*, all of

---

[27] *Id.* at 109.

[28] *Id.* at 110.

[29] *Id.*

[30] *Id.* at 112.

[31] *Id.*

[32] *Id.*

the defendants had raised the same dispositive defense based on the release, and the plaintiff's arguments that the release was invalid "involve identical legal and factual issues applicable to the individual defendants and Snap-on."[33]  That court concluded:

> [W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.  Instead, that is a merits determination which must be made by the state court.[34]

Several district courts across the country have applied identical reasoning in refusing to find fraudulent joinder where the only basis for the claim is a defense equally applicable to all of the defendants, diverse and nondiverse.[35]

---

[33] *Id.* at 112-13.

[34] *Id.* at 113; *cf.* 14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3721 (3d ed. Supp. 2003) ("[T]he defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case.  Thus, a nondiverse codefendant may not remove a case to federal court on the theory that because it was not liable to the plaintiff, it should be disregarded for removal jurisdiction purposes.  In such a situation, the question of the defendant's liability should be adjudicated in the state forum and not, de facto, in the context of procedures such as removal.").

[35] *See, e.g.*, *Lovell v. Bad Ass Coffee Co. of Hawaii, Inc.*, 103 F. Supp. 2d 1233, 1237 (D. Haw. 2000) ("There is a distinction ... between a complete lack of a cause of action against a sham defendant and an inquiry as to whether those defendants could propound defenses to an otherwise valid cause of action.  A finding of fraudulent joinder is improper if the defendant's assertions go to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was ill founded as to all the defendants." (internal quotation marks omitted)); *Cheskiewicz ex rel. Cheskiewicz*, No. 02-3583, 2002 WL 1880524, at *3 (E.D. Pa. Aug. 15, 2002) ("[T]he defendants' arguments about the effect of the Vaccine Act on plaintiffs' claims are not unique to ... the non-diverse defendants, but are instead

-10-

Illinois Central and MDOT reply that we have allowed fraudulent joinder claims to be premised on the validity of the nondiverse defendants' affirmative defenses and that we have also refused to remand a case on the basis of the common defense theory. Although we have before looked to the validity of a nondiverse party's affirmative defenses in determining whether that party was fraudulently joined, we did not confront, much less decide, whether defenses common to diverse and nondiverse defendants could serve as the basis for a claim of fraudulent joinder.[36]

MDOT and the railroad argue that *Dudley v. Community Public*

---

general to all removing defendants. Each is a manufacturer of a vaccine or Thimerosal having allegedly impacted the plaintiffs, and each will have the same opportunity to assert the Vaccine Act as a defense to plaintiffs' claims. However meritorious those defenses may be, they are not unique to the non-diverse parties. Their disposition is a merits determination which must be made by the state court." (internal quotation marks omitted)).

We do not address today the situation in which a defense is not common to all defendants.

[36] *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 753 (5th Cir. 1996) ("Having concluded that Sid Richardson successfully stated a claim for breach of contract and corporate disregard, we turn to the affirmative defenses raised by the [nondiverse] defendants. Should the defendants prevail on any of these defenses, it necessarily follows that joinder was fraudulent, and the district court properly exercised its removal jurisdiction. On the other hand, if there is any possibility that Sid Richardson might survive the affirmative defenses, we must vacate for remand to state court."). In that case we had no need to broach the issue whether a defense equally applicable to all defendants could not serve as the basis for a fraudulent joinder argument because we found that the motion to remand should have been granted on the alternative basis that, even considering the defenses raised by the defendants, they did not preclude the plaintiff's claim. *Id.* at 753-57.

-11-

*Service Co.* decided the question.[37] *Dudley* held that the district court erred in denying the plaintiffs' remand motion, reasoning that a Texas law did not apply to prohibit the plaintiffs' claims against the nondiverse defendant.[38] The plaintiffs, the widow and dependent of a deceased electric company employee who had been electrocuted on the job, had sued the company and the deceased's superintendent for gross negligence.[39] The superintendent and the plaintiffs both lived in Texas, while the company was a citizen of Delaware.[40] Nevertheless, the company removed the case to federal court on the basis of diversity jurisdiction, arguing that the plaintiffs had fraudulently joined the superintendent because the Texas Workmen's Compensation Law acted as a defense to the plaintiffs' claims against the employee.[41] The court rejected this contention, finding that the law allowed an action against the superintendent for exemplary damages.[42]

The company never claimed that the Compensation Law barred the plaintiffs' claims against it. Instead, we explained that the company contended that the law blocked any action against "a co-

---

[37] 108 F.2d 119 (5th Cir. 1939).

[38] *Id.* at 123.

[39] *Id.* at 120-21.

[40] *Id.* at 120.

[41] *Id.* at 121.

[42] *Id.* at 122-23.

-12-

employe[e] for injury or death" so "there could be no right of action against" the superintendent.[43]  The only indication that the Compensation Law could be applied to defeat the plaintiffs' claims against both defendants is the court's statement that if section three of the law, which provided that employees of a company falling within the scope of the law had no right of action against their employer or co-employees for personal injuries, were read in isolation of the other sections, "Dudley's representatives could sue neither [the superintendent] nor the common employer."[44]  However, the court quickly added that section five allowed a plaintiff to recover exemplary damages from an employer for personal injuries.[45]  Thus, the only question was whether the law also allowed exemplary damages against a co-employee.  The court found that the law did allow such damages, and that therefore the defendant superintendent was not fraudulently joined.[46]

The only other case Illinois Central and MDOT rely upon in asserting that we must reject the common defense theory is a District of Colorado case, *Frontier Airlines, Inc. v. United Air Lines, Inc.*[47]  The *Frontier* court found fraudulent joinder on the

---

[43] *Id.* at 121.

[44] *Id.*

[45] *Id.* at 122.

[46] *Id.*

[47] 758 F. Supp. 1399 (D. Colo. 1989).

-13-

basis of the defendants' common conflict preemption defense and applied its preemption analysis to the plaintiff's claims against the diverse defendant.[48]  However, the opinion does not consider *Cockrell* or *Boyer*.  Indeed, the plaintiff apparently did not argue that fraudulent joinder could not be based on the common preemption defense.[49]

Illinois Central and MDOT have cobbled together no reasoned support for their position, which is contrary to the Supreme Court's century-old command in *Cockrell* that the fraudulent joinder allegations be directed toward the joinder, not to "the merits of the action as an entirety."  Moreover, it contravenes the purpose

_____

[48] *Id.* at 1411.

[49] Although not cited by MDOT and Illinois Central, *Ritchey v. Upjohn Co.*, 139 F.3d 1313 (9th Cir. 1998), also supports their argument.  There the Ninth Circuit found fraudulent joinder because the claims against the nondiverse defendants were barred by the statute of limitations. *Id.* at 1319-20.  It did so despite the fact that the same statute of limitations defense applied to bar the claim against the diverse defendant. *Id*. at 1320.  However, the *Ritchey* court acknowledged the awkwardness of applying a common defense to find fraudulent joinder:

> We recognize that it is, perhaps, slightly peculiar to speak of [the nondiverse defendants] as sham defendants because the statute of limitations bars a claim against them, when that would seem to lead to an argument that [the diverse defendant] itself is a sham defendant because the statute of limitations has also run against it.  Nevertheless, the fact is that [the plaintiff] did not state a cause of action against anyone, and his failure to state that cause of action against [the nondiverse defendants] demonstrates beyond peradventure that they were sham defendants for purposes of removal.

*Id.*

-14-

of the fraudulent joinder doctrine, which is to prevent a plaintiff from naming a nondiverse party as a defendant solely for the purposes of depriving the court of jurisdiction.[50]

### III

Reference to traditional removal rules and principles persuade that the *Boyer* court's holding, based on *Cockrell*, is necessary to prevent erosion of the well-pleaded complaint rule and serves the federal-state balance. The well-pleaded complaint rule bars removal on the basis of federal question jurisdiction unless that jurisdiction is evident from the face of the complaint.[51] A federal defense then does not give a defendant the right to remove:

> "[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."[52]

It is true that complete preemption acts as a narrow exception to the well-pleaded complaint rule, but neither Illinois Central nor MDOT disputes that it is conflict preemption, not complete

---

[50] *See* 15 MOORE'S FEDERAL PRACTICE § 102.21[5][a] (James Wm. Moore et al., eds., 3d ed. 1998).

[51] *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188 (5th Cir. 2001).

[52] *Roark v. Humana, Inc.*, 307 F.3d 298, 304 (5th Cir. 2002) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13-14 (1983)).

preemption, which is at issue here.[53]

Because Illinois Central claims only conflict preemption, it is not entitled, under the well-pleaded complaint rule, to a federal forum for its resolution.[54] If Illinois Central had removed on the basis of federal question jurisdiction, pointing to a federal defense, the district court could not have "resolve[d] the dispute regarding preemption," and would have "lack[ed] power to do anything other than remand to the state court where the preemption issue [could] be addressed and resolved."[55] We, like the Third Circuit, recognize that "[s]tate courts are competent to determine whether state law has been preempted by federal law, and absent complete preemption, they must be permitted to perform that

---

[53] Complete preemption occurs when a federal statute has a "preemptive force ... [that] is so powerful as to displace entirely any state causes of action." *Id.* at 305 (internal quotation marks omitted). If "a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily arises under federal law." *Id.* (internal quotation marks omitted). Such an action is excepted from the well-pleaded complaint rule and confers original and removal jurisdiction. *Id.*

On the other hand, conflict preemption, also known as ordinary preemption, fails to establish federal question jurisdiction. "Rather than transmogrifying a state cause of action into a federal one – as occurs with complete preemption – conflict preemption serves as a *defense* to a state action." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). The well-pleaded complaint rule prevents a defendant from removing simply on the basis of conflict preemption. *Roark*, 307 F.3d at 305.

[54] *Roark*, 307 F.3d at 305.

[55] *Giles*, 172 F.3d at 337.

function with regard to state law claims brought before them."[56]

Regardless of whether it intended to, Illinois Central circumvented this limit on removal jurisdiction by removing on the basis of its conflict preemption defense but clothing it in a claim of diversity jurisdiction and fraudulent joinder. It successfully convinced the district court to decide the preemption question, which if Illinois Central had removed the case on the basis of federal question jurisdiction the court would have had no power to do, in the guise of determining whether MDOT, the non-diverse party, had been fraudulently joined. This use of fraudulent joinder frustrates the overarching principle of the well-pleaded complaint rule, that state courts are equally competent to decide federal defenses.

IV

We conclude that the district court erred in denying Smallwood's motion to remand and in dismissing MDOT as a party, vacate the judgment in favor of Illinois Central, and remand the case to the district court with instruction to remand it to the state court from which it was removed. It is for Mississippi state courts to decide the merits of MDOT and Illinois Central's common preemption defense.

VACATED and REMANDED.

---

[56] *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 316 (3d Cir. 1994) (internal quotation marks omitted).