Rick **HUCKABY** and Jeri Boyd, Plaintiffs,

v.

**GANS & SMITH INSURANCE, AGENCY, INC.** and Pennsylvania, General Insurance Company, Defendants.

No. 6:03–CV–356.

United States District Court, E.D. Texas, Tyler Division.

Dec. 5, 2003.

Franklyn Lee Supercinski, Longview TX, for Plaintiffs.

Rex A. Nichols, Jr., of Nichols & Nichols, PC, Longview, TX, for Gans & Smitn Insurance Agency.

John Howard Thomisee, Jr., of Simmons, Lawrence and Thomisee, Houston, TX, for Pennsylvania General Insurance Co.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Plaintiffs Rick Huckaby and Jeri Boyd (collectively "Plaintiffs") sued Defendants Gans & Smith Insurance Agency, Inc. ("Gans") and Pennsylvania General Insurance Company ("PGIC", collectively "Defendants") in Texas state court seeking a declaration of rights concerning an insurance policy issued by Defendants. Despite Gans being a Texas resident, PGIC removed the case to this Court. In response to Plaintiffs' motion to remand, PGIC and Gans claim that Plaintiffs have fraudulently joined Gans to defeat diversity. Because the defenses asserted by Gans to show fraudulent joinder would also apply to PGIC, the Court **GRANTS** Plaintiffs' motion to remand and **ORDERS** this case remanded to the 188th Judicial District Court for Gregg County, Texas.

## BACKGROUND

This case arises from a multiple car accident which killed Plaintiffs' son. Lester Donald Lamon ("Lamon"), a driver for A.G. Perry & Son, Inc. ("Perry"), blocked the southbound lanes of U.S. highway 59 with his trailer when he attempted to turn his rig onto a highway crossover. The blockage caused three other vehicles to have accidents in quick succession. Joshua Kyle Huckaby, Plaintiffs' son, was killed when his vehicle collided with the stopped trailer. Immediately thereafter, a van struck the trailer's rear and another car swerved into highway signs to avoid the pileup.

Plaintiffs have filed this declaratory judgment action to determine Defendants' liability as Perry's insurers. Gans is PGIC's local insurance agent. Perry's insurance policy provides for up to $1,000,000 coverage per "accident." Plain-

tiffs seek a declaration that the event in question is three separate accidents under the policy rather than one.

In response to Plaintiffs' Motion to Remand, Defendants assert three defenses that would prevent any possible recovery from Gans and thus make his joinder "fraudulent." First, Defendants assert that Plaintiffs cannot recover against Gans under Texas law because Plaintiffs do not have a judgment against Perry, the insured. Second, Defendants argue that Texas' four year statute of limitations bars the action against Gans because the accident occurred on November 14, 1996, approximately 6.5 years before filing in Gregg County. Finally, they argue that this Court cannot grant Plaintiffs' requested declaration because another court, the Southern District of Texas, has already resolved the issue against Plaintiffs in *Pennsylvania General Insurance Co. v. A.G. Perry & Son, Inc.*, cause no. H–97–3839.

## FRAUDULENT JOINDER

■■■ A plaintiff may not preclude diversity jurisdiction by naming a non-diverse defendant against whom the plaintiff cannot recover. A removing party bears the burden of establishing fraudulent joinder by showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003). If the defendants establish any of the standing, statute of frauds, or collateral estoppel defenses noted above, then Plaintiffs cannot establish a cause of action against Gans in state court. In such case, this Court would have diver-

sity jurisdiction. However, any one of the asserted defenses, if proved as to Gans, would likewise apply to bar suit against PGIC.

*Defenses common to all defendants and fraudulent joinder.*

■■■ The Fifth Circuit recently held that defenses common to both diverse and nondiverse defendants cannot support a fraudulent joinder claim. *Smallwood v. Illinois Central Railroad Co.*, 342 F.3d 400, 407–08 (5th Cir.2003).[1] Fraudulent joinder allegations are improper where they "manifestly [go] to the merits of the action as an entirety, and not to the joinder; that is to say [the allegations indicate] that the plaintiff's case was ill founded as to all the defendants." *Id.* at 403–04 (citing *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 153, 34 S.Ct. 278, 58 L.Ed. 544 (1914)). Fraudulent joinder is a jurisdictional, threshold issue and courts cannot allow fraudulent joinder defenses to dispose of the entire case on the merits. *Id.* at 404–05 (citing *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 109–10 (3d Cir. 1990)). The *Smallwood* court made clear that the asserted federal defense common to all defendants could not support fraudulent joinder.[2] However, it is not clear whether *Smallwood* applies to state law defenses, as in this case, that may be resolved as a matter of law. To resolve this issue, the Court must analyze *Smallwood* and the cases cited therein in some detail.

*Does Smallwood apply to state law defenses?*

In *Smallwood*, plaintiff Kelli Smallwood ("Smallwood") sued the Mississippi De-

---

1. Although unpublished at the time this opinion was written, *Smallwood* is designated for publication.

2. The Fifth Circuit in *Collins v. American Home Products Corp.*, 343 F.3d 765, 768–69

(5th Cir.2003) followed *Smallwood* in another case where fraudulent joinder was based on a federal defense common to diverse and nondiverse defendants. *Collins* is designated for publication.

partment of Transportation ("MDOT") and Illinois Central Railroad Company ("Illinois Central") in Mississippi state court. Smallwood alleged that MDOT and Illinois Central negligently failed to install a gate at a railroad crossing where an Illinois Central locomotive struck Smallwood's automobile. *Id.* at 402–03. Illinois Central removed the case, based on diversity, and argued that Smallwood could not establish a state law claim against MDOT because the Federal Railroad Safety Act ("FRSA") preempted any state law claims against MDOT. *Id.* However, because the FRSA would have also preempted any claims against Illinois Central, the Fifth Circuit held that the trial court could not consider the FRSA defense as a basis for fraudulent joinder and must remand the case to state court. *Id.* at 407–08.

The basis for the *Smallwood* court's holding was its concern that allowing common federal defenses to establish fraudulent joinder would "erode" the well-pleaded complaint rule. *Id.* The well-pleaded complaint rule prevents removal based on federal question jurisdiction unless a federal question appears on the complaint's face. *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.,* 271 F.3d 186, 188 (5th Cir.2001). In *Smallwood,* the Fifth Circuit would not allow the defendants to obtain a federal court's ruling on the FRSA defense because it was not apparent on the complaint's face. *Smallwood,* 342 F.3d 400, 407–08. The *Smallwood* court declared:

> Regardless of whether it intended to, Illinois Central circumvented [the well-pleaded complaint rule] by removing on the basis of its conflict preemption defense but clothing it in a claim of diversity jurisdiction and fraudulent joinder. It successfully convinced the district court to decide the preemption question, which if Illinois Central had removed

the case on the basis of federal question jurisdiction the court would have had no power to do, in the guise of determining whether MDOT, the non-diverse party, had been fraudulently joined. This use of fraudulent joinder frustrates the overarching principle of the well-pleaded complaint rule, that state courts are equally competent to decide federal issues.

*Id.*

However, common state law defenses would not erode the well-pleaded complaint rule. A foreign defendant asserting diversity jurisdiction and fraudulent joinder based on state law defenses is not attempting to frustrate a state court's ability to decide a federal issue, but rather is exercising its right to have a federal court hear the case. Indeed, diversity jurisdiction is rooted in concerns of local prejudice to out of state defendants. *See Martin v. Hunter's Lessee,* 1 Wheat. 304, 14 U.S. 304, 347, 4 L.Ed. 97 (1816); *DiRuggiero v. Rodgers,* 743 F.2d 1009, 1018 (3rd Cir. 1984). In the case at bar, at least two of the three basis for fraudulent joinder are state law claims: (1) failure to obtain judgment against the insured, and (2) statute of limitations. Therefore, the fraudulent joinder claim in this case does not directly implicate the Fifth Circuit's stated concerns in *Smallwood.*

*Does prior jurisprudence resolve the issue?*

The cases on which *Smallwood* relied may provide insight into whether state law defenses common to both diverse and non-diverse defendants can support fraudulent joinder. *Smallwood* primarily relied on the Supreme Court's holding in *Chesapeake & Ohio Railway Co. v. Cockrell,* 232 U.S. 146, 153, 34 S.Ct. 278, 58 L.Ed. 544 (1914) and the Third Circuit's holding in *Boyer v. Snap–On Tools Corporation,* 913 F.2d 108, 112–13 (3rd Cir.1990). *Smallwood,* 342 F.3d 400, 403–05.[3] The Fifth

---

**3.** The Court recognizes that the Fifth Circuit      did not discuss what it thought about these

Circuit also noted the Ninth Circuit's holding in *Ritchey v. Upjohn Drug Company,* 139 F.3d 1313, 1320 (9th Cir.1998).

In *Cockrell,* an estate administrator sued a Virginia railway company and two of its employees, an engineer and fireman, after one of the defendants' trains killed the administrator's decedent. *Cockrell,* 232 U.S. at 150, 34 S.Ct. 278. Although the administrator, engineer, and fireman were Kentucky residents, the Virginia railway company attempted to remove the case from Kentucky state court to federal court. *Id.* The railway company's liability was wholly based on its employees' conduct, rather than any claim that the company itself was negligent. *Id.* at 153, 34 S.Ct. 278. The railway company alleged that removal was proper because the negligence claims against the resident defendants were "false and untrue, and were known by the plaintiff, or could have been known by the exercise of ordinary diligence, to be false and untrue." *Id.* at 151, 34 S.Ct. 278.

The *Cockrell* court held that the district court could not find fraudulent joinder because such a finding would have required the court to resolve the entire negligence claim in the underlying lawsuit. *Id.* at 153, 34 S.Ct. 278. The Court noted that under Kentucky law, the railway company could be vicariously liable for its employees' conduct and thus the administrator had stated a valid cause of action. *Id.* at 152–53, 34 S.Ct. 278. The Court found that the simple allegation that the administrator's complaints were "false and untrue" was nothing more than an ordinary denial. *Id.* at 153, 34 S.Ct. 278 (describing the defense as "a traverse of the charges of negligence"). As such, resolving the fraudulent joinder issue would require the district court to adjudicate the entire neg-

ligence action. *Id.* The railway company was not asking the lower court to make a ruling as a matter of law based on the pleadings and joinder, but rather requested a merits-based determination on an entire negligence cause of action. Because Kentucky law provided a cause of action against the engineer and fireman and because the railway company's liability was wholly derivative of the engineer and fireman, the plaintiff had a right to sue the employees and their joinder was in no way "fraudulent." *Id.*

*Cockrell* may support applying *Smallwood* to state law claims. *Cockrell,* unlike *Smallwood,* did involve a state law defense that applied to both diverse and nondiverse defendants. However, the state law "defense" in *Cockrell* more closely resembles a general denial than a traditional defense or affirmative defense. The *Cockrell* court clearly did not want district courts transforming threshold jurisdictional matters, such as fraudulent joinder, into in-depth trials of entire claims. Thus, *Cockrell* prohibits courts from adjudicating entire claims at a preliminary, jurisdictional stage. However, in the case at bar, the asserted defenses (standing, statute of limitations, and collateral estoppel) are traditional threshold defenses rather than merits decisions on the underlying claims. Courts typically resolve standing and statute of limitations issues at preliminary stages without determining final issues on the merits. Thus, this case is partially distinguishable from *Cockrell.*

The Fifth Circuit also relied on *Boyer v. Snap–On Tools Corporation,* 913 F.2d 108, 112–13 (3rd Cir.1990). In that case, the plaintiff Boyer entered into a "dealership agreement" with Snap–On Tools to sell Snap–On's products. *Boyer,* 913 F.2d at 109. Two of Snap–On Tools' employees,

cases but rather only discussed these cases as cases cited by Smallwood. However, since that court ultimately upheld Smallwood's ar-

gument, this Court presumes that the Fifth Circuit looked favorably on these opinions.

Baldwin and Kaiser, negotiated the dealership agreement with Boyer. After Snap–On ultimately terminated the dealership agreement for being unprofitable, Boyer signed a "termination agreement" with Snap–On providing that "both parties to this Agreement freely waive any and all claims they may have against each other arising out of the Dealership terminated by this Agreement." *Id.* Thereafter, Boyer sued Snap–On, Baldwin, and Kaiser in Pennsylvania state court on state law fraud, misrepresentation, and consumer protection theories. *Id.* Boyer, Baldwin, and Kaiser were Pennsylvania residents and Snap–On Tools was a Delaware corporation with its principle place of business in Wisconsin. *Id.* Snap–On removed the case to federal court and the district court denied the motion to remand because the "in-state defendants would prevail in a motion for summary judgment for failure to state a cause of action by reason of the release in the termination agreement." *Id.* at 110.

The Third Circuit found that the district court could not find fraudulent joinder of the in-state defendants based on a release clause because the release clause also applied to the foreign defendant, Snap–On. *Id.* at 112–13. The *Boyer* court found that the contractual release defense was equally applicable to Snap–On and Baldwin and Kaiser. Therefore, "the district court, in the guise of deciding whether the joinder was fraudulent, stepped from the threshold jurisdictional issue into a decision on the merits." *Id.* at 112. The Third Circuit held that because the release involved "identical legal and factual issues" applicable to all defendants, a court deciding the release's validity in a remand motion would impermissibly transform the remand ruling into a ruling on the merits. *Id.* at 113.

Although *Boyer* more closely resembles the case at bar than *Cockrell,* it may still be distinguishable. Like this case, *Boyer* involved a state law defense that was equally applicable to resident and foreign defendants. Moreover, a claim of contractual waiver from suit more closely resembles a defense than *Cockrell's* general denial. However, the waiver defense in *Boyer* is distinguishable from the defenses in this case. In *Boyer,* the plaintiffs claimed that the waiver was ineffective because it was "procured through fraud, economic duress, or in violation of Snap-on's fiduciary duty; that the release covered claims of which the Boyers were unaware; that at the time the Boyers signed the release they were unaware of the alleged fraudulent practices . . .; and that Mary Boyer, who did not sign the release, had an independent action against the defendants." *Id.* at 110. For the district court to rule on the waiver's effectiveness, it would have been forced to make significant factual and legal inquiries into the plaintiffs' claims. Here, the standing and statute of limitations defenses are pure questions of law.

*Ritchey v. Upjohn Drug Company,* 139 F.3d 1313, 1320 (9th Cir.1998) supports the distinctions discussed above. In that case, plaintiff Ritchey sued Upjohn and doctors Dement and Stanford after suffering side effects from the Upjohn drug Halcion. Ritchey alleged that Upjohn suppressed information about Halcion's side effects and that the doctors conspired with Upjohn to conceal that bad information. *Ritchey,* 139 F.3d at 1315. Upjohn removed the case claiming that there was complete diversity of citizenship between it and Ritchey and that the doctors were sham defendants because they could rely on res judicata and statute of limitations defenses. *Id.* The district court denied the motion to remand and the Ninth Circuit affirmed despite the fact that the asserted statute of limitations defense applied equally to all defendants. *Id.*

The Ninth Circuit held that the district court properly found that the non-diverse doctors were fraudulently joined based on the statute of limitations defense even though the defense applied to all defendants. The court first noted that a statute of limitations defense does not address a claim's merits but is instead a purely procedural bar to recovery. *Id.* at 1319. The court then recognized that it was somewhat "peculiar" to call some defendants *sham* defendants even though the defense also prevents recovery from the diverse defendant. *Id.* at 1320. However the court declared that "Ritchey did not state a cause of action against anyone, and his failure to state that cause of action against Dr. Dement and Stanford demonstrates beyond peradventure that they were sham defendants for purposes of removal." Therefore, under *Ritchey*, the statute of limitations asserted in this case does not go to the case's merits and could support fraudulent joinder despite applying to all defendants equally.

However, *Smallwood's* treatment of *Ritchey* compels this Court to reject the Ninth Circuit's approach. In footnote 48, the Fifth Circuit raised *Ritchey* despite MDOT and Illinois Central's failure to do so. *Smallwood,* 342 F.3d at 407, fn. 48. The Fifth Circuit described the *Ritchey* approach as "awkward." Additionally, the court described *Ritchey* as supporting the parties whom it ruled against. *Id.* Thus, although footnote 48 is somewhat ambiguous, this Court finds that *Smallwood* rejected *Ritchey*.

## CONCLUSION

The Court holds that it cannot address Gans' and PGIC's fraudulent joinder arguments because the asserted defenses apply to both diverse and non-diverse defendants. The fact that the Fifth Circuit devoted an entire section of its opinion in *Smallwood* to preserving the well-pleaded complaint rule raises a genuine question of whether that opinion applies only where fraudulent joinder is based on federal defenses. *Id.* at 407–08. Moreover, both *Cockrell* and *Boyer, Smallwood's* primary authority, are distinguishable from this case. However, by choosing to include reference to *Ritchey,* a case raising an identical state law defense as in the case at bar, and by describing that holding as both "awkward" and supportive of the losing side, this Court finds that the Fifth Circuit intended for *Smallwood* to apply to all cases.

The Court finds that it has no jurisdiction to hear this case because there is not complete diversity among the parties. 28 U.S.C. § 1332. Plaintiffs and defendant Gans are Texas residents. Although Gans and PGIC have asserted several defenses which may prove that Plaintiffs fraudulently joined Gans, those defenses all apply to both Gans and PGIC. As such, this Court cannot consider them in determining a claim of fraudulent joinder. *Smallwood,* 342 F.3d 400, 407–08. Therefore, this court **GRANTS** the motion to remand and **ORDERS** this case remanded to the 188th Judicial District Court for Gregg County, Texas.